cr-06230-WPD    Document 163    Entered on FLSD Docket 07/26/2001



Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301

---

July 18, 2001

RE: 00-16436-FF    USA v. Aldin Wilson
DC DKT NO.: 00-06230 CR-WPD

TO:   Clarence Maddox

CC:   Irwin G. Lichter

CC:   Harriett R. Galvin

CC:   Sally M. Richardson

CC:   Anne Ruth Schultz

CC:   Bertha R. Mitrani

CC:   Administrative File



# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Thomas K. Kahn
Clerk

In Replying Give Number
Of Case And Names of Parties

July 18, 2001

Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301



RE: 00-16436-FF      USA v. Aldin Wilson
DC DKT NO.: 00-06230 CR-WPD

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
   Original Exhibits, consisting of: one psi
   Original record on appeal or review, consisting of: three volumes

Please acknowledge receipt on the enclosed copy of this letter.

A copy of this letter and the judgment form, but not a copy of the court's opinion or Rule 36-1 decision, is also being mailed to counsel and pro se parties. A copy of the court's opinion or Rule 36-1 decision was previously mailed to counsel and pro se parties on the date it was issued.

                    Sincerely,

                    THOMAS K. KAHN, Clerk

                    Reply To: James Delaney (404) 335-6113

Encl.

MDT-1 (1-2001)

# United States Court of Appeals

For the Eleventh Circuit



No. 00-16436

District Court Docket No.
00-06230-CR-WPD

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Jun 19, 2001

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

versus

ALDIN WILSON,

    Defendant-Appellant.

------------------------------------------------

Appeal from the United States District Court
for the Southern District of Florida

------------------------------------------------

J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion, included herein by reference, is entered as the judgment of this Court.

        Entered:    June 19, 2001
    For the Court:    Thomas K. Kahn, Clerk
           By:    McCombs, Elaine



ISSUED AS MANDATE
JUL 1 8 2001
U.S. COURT OF APPEALS
ATLANTA, GA.

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT



No. 00-16436
Non-Argument Calendar

D. C. Docket No. 00-06230-CR-WPD

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

ALDIN WILSON,

                              Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Florida

---

(June 19, 2001)

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Aldin Wilson appeals his 87-month sentence for conspiracy to import marijuana, in violation of 21 U.S.C. § 963. For the first time on appeal, Wilson argues that the district court erred in enhancing his sentence under U.S.S.G. § 2D1.1(b)(2)(A) for the use of a private aircraft in importing marijuana, on the basis that the record is silent as to how transportation of the marijuana from Cuba to the United States was completed. Upon thorough review of the record, we affirm Wilson's sentence.

According to the Presentence Investigation Report ("PSI"), Wilson and several co-defendants, along with a confidential source ("CS1"), organized the importation of approximately 1,700 pounds of marijuana from Jamaica to the United States. In preparation for the importation, CS1 introduced Wilson and the co-defendants to the pilot who would transport the marijuana. Upon meeting the pilot, the co-defendants indicated that they would prefer to use a different pilot, referred to hereafter as "CS2." Accordingly, on August 6, 2000, CS2 flew to Jamaica in a private plane to pick up the marijuana and then delivered it to special drug enforcement agents in Guantanamo Bay, Cuba. That same day, the marijuana was transported to the United States, and CS1 informed Wilson that it had arrived without incident. Wilson and the co-defendants were subsequently arrested upon attempting to retrieve the marijuana from a warehouse in Florida. Thereafter,

2

Wilson pleaded guilty to conspiracy to import marijuana.

In Wilson's PSI, the government recommended a two-level increase in the offense level under U.S.S.G. § 2D1.1(b)(2)(A) because "other than a regularly scheduled commercial air carrier was used to import the marijuana." Wilson objected to this recommendation, arguing that he had expected the marijuana to be transported by sea and that the aircraft was procured and the pilot suggested by a government informant. Wilson did not, however, challenge the PSI's assertion that the aircraft used was not a regularly scheduled commercial air carrier. At the sentencing hearing, the district court overruled Wilson's objection and enhanced the offense level by two levels for use of a private plane to import marijuana.

"We review the district court's application and interpretation of the Sentencing Guidelines under the de novo standard, but review its findings of fact only for clear error." United States v. Harness, 180 F.3d 1232, 1234 (11th Cir. 1999). We review objections to sentencing issues not raised in the district court, however, for plain error to avoid manifest injustice. See id.

The Sentencing Guidelines provide that, "[i]f the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance, . . . increase by 2 levels." U.S.S.G. §

3

2D1.1(b)(2). This Circuit had held that this language "clearly contemplates a completed event, an actual importation." United States v. Chastain, 198 F.3d 1338, 1353 (11th Cir. 1999). Therefore, in order to trigger the two-level enhancement, it is insufficient that conspirators merely intend to use a private plane in the importation. See id. Rather, conspirators must actually import a controlled substance on a private aircraft. See id. (holding that district court erred in applying enhancement where defendants were arrested before completing plans to import marijuana from Jamaica to United States on private plane).

Wilson argues for the first time on appeal that the record was insufficient to support the court's finding that a private plane was utilized to import the marijuana into the United States. We disagree. Although the sentencing transcript only expressly shows that a private plane was used to transport the marijuana from Jamaica to Cuba, the district court reasonably could infer from the following evidence that a private plane also was used to import the marijuana the remainder of the trip into the United States: (1) 1,707 pounds of marijuana were involved; (2) the conspirators planned for the marijuana to be flown by private aircraft from Jamaica to the United States; (3) the marijuana was transported by private aircraft from Jamaica to Cuba; (4) the marijuana was imported from Cuba into the United States; and (5) Wilson was told that the importation went without

incident.

Moreover, at sentencing Wilson did not object to the PSI's assertion that an aircraft other than a regularly scheduled commercial air carrier was used to import the marijuana.[1] Instead, Wilson argued that he should not have received the increase on the ground that a government agent had procured the plane and suggested the pilot. In so arguing, Wilson implicitly admitted that a private plane was used to import the marijuana, as a plane procured in such manner is not a regularly scheduled commercial air carrier. We therefore hold that the district court did not plainly err by enhancing Wilson's sentence under § 2D.1(b)(2)(A).

AFFIRMED.

A True Copy - Attested
Clerk, U.S. Court of Appeals
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia

---

[1] The PSI states "[a]s other than a regularly scheduled commercial air carrier was used to import the marijuana, a two level increase is warranted, . . . ." (emphasis added). In addition, the PSI states that "[b]etween May 31, 2000, and August 6, 2000 (the date the marijuana was flown in from Jamaica to the USA by CS2, CS1 and Wilson spoke on approximately 25 occasions . . . ." (emphasis added). Because it is undisputed that CS2 transported the marijuana from Jamaica to Cuba in a private aircraft, this statement indicates that the marijuana was flown into the United States on a private plane as well.

5