IN THE UNITED STATES DISTRIC COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

05-60390

CIV-DIMITROULEAS /TORRES

Aldin Wilson )
     Petitioner )
 )
 )
   V. )00-6230-CR-WPD
 )
 )
United States Of America )
     Respondant )

FILED by _____ D.C.
INTAKE

MAR 16 2005

CLARENCE E. MADDOX
CLERK U.S. DIST. CT.
S.D. OF FL - FT. LAUD.

---

**MOTION: FOR SECOND SUCCESSIVE 28U.S.C. § 2255 TO VACATE,
SET ASIDE OR CORRECT SENTENCE-UNDER NEW LAW**

---

Dochet # 00-6230-CR-WPD

Respectfully Submitted,

*Aldin A Wilson*

Aldin Wilson
Reg # 55421 004
F.C.I. Ft. Dix
P.O. Box 7000
Fort Dix, N.J. 08640

cat / div. Broward
Case # 0:05CV60390
Judge WPD    Mag 261
Motn If0 _____ Fee pd $ _____
Receipt # _____

## STATEMENT OF FACT

The petitioner was arrested on August 9, 2000, and charged on a Four count indictment for violation of the drug laws of the United States.

The petitioner was named in all Four counts of the indictment, The indictment reads:

> Count I From om or about May 31, 2000, through on or about Aug 6, 2000, at Broward County, in the Southern District Of Florida, and elsewhere the defendants did knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury to inport into the United States, from a place outside thereof, in excess of One Hundred (100) kilograms of a schedule I controlled substance, containing marjiwana in violation of 21 U.S.C. § 952 (a) all in violation of 21 U.S.C. §   .

Count **2,3** and **4,** are the same as Count one except the dates.

Pursuant to a Plea agreement, the petitionersigned, and all counts were dropped, but count one.

The petitioner was sentenced on count **I** December 1, 2000, and received a sentence of **87** months.

The petitioner has been incarserated since August 9, 2000,

# ARGUEMENT

There are two issue at stake and thet are:#1, The petitioner was enhanced beyond the charge of the indictment on count I See Exhibit I (Indictment). #2. The petitioner was given a two level enhancement because a airplane was used in the offense.

Since BLAKELY V. WASHINGTON 159L.Ed.2d 403 (2004). It is UNCONSTITUTIONAL for a Judge to add enhancements to a defendant that will increase the punishment.

Please look at this indictment, it plainly states an excess of 100 Kilograms of marijiwana. The cut off is 400 Kilograms ofmarijiwana. Using the November 1, 2001, U.S.S.G. Book the offense level would be 26, C.H.C. I.

The petitioner is simply asking that he be punished on his base offense level of 26,C.H.C. I that punishment would be C.H.C. level 26 less 3 points for acceptance of responsibility. Punishment would be 46to 57 months.

The petitioner has been in prison 54 months not counting good time of another seven plus months making a total of 61 months. If the proper offense level had been used the petitioner would already be free.

MEMORANDUM OF LAW IN SUPPORT OF

SUCCESSIVE PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

**STATEMENT OF ISSUES UNDER CONSIDERATION**

A.    THE PETITIONER'S RIGHTS TO A JURY TRIAL AND DUE PROCESS OF
LAW WERE VIOLATED WHEN HE WAS PUNISHED UPON FACTS THAT WERE NEITHER
SUBMITTED TO A JURY NOR PROVED BEYOND A REASONABLE DOUBT; IF THE
SENTENCING GUIDELINES ALLOW THE DISTRICT COURT TO PUNISH THE
PETITIONER UPON SUCH FACTS, THE GUIDELINES ARE UNCONSTITUTIONAL AS
APPLIED.

**LAW AND ARGUMENT**

The Supreme Court has set new precedent requiring "other than
the fact of a prior conviction, any act that increases the stat-
utory maximum [of a sentence] must be submitted to a jury and proved
beyond a reasonable doubt." Blakely v. Washington, 124 S. Ct. 2531,
2536; 159 L.Ed. 2d 403 (2004)(citing Apprendi v. New Jersey, 530
U.S. 466, 490, 147 L.Ed.2d 435, 120 S. Ct. 2348 (2000). The stat-
utory maximum was defined as the maximum sentence that may be
imposed by a judge based solely on the facts reflected in the jury
virdict. Blakely, at 124 S.Ct. at 2537.

A.    **THE PETITIONER'S RIGHTS TO A JURY TRIAL AND DUE PROCESS OF LAW WERE VIOLATED WHEN HE WAS PUNISHED UPON FACTS THAT WERE NEITHER SUBMITTED TO A TRIER OF FACT NOR PROVED BEYOND A REASONABLE DOUBT; IF THE SENTENCING GUIDELINES ALLOW THE DISTRICT COURT TO PUNISH THE PETITIONER UPON SUCH FACTS, THE GUIDELINES ARE UNCONSTITUTIONAL AS APPLIED.**

The United States Constitution guarantees each defendant a trial by jury wherein no punishment is imposed until a jury determines the defendant guilty of particular conduct beyond a reasonable doubt.  See U.S. Const. Amends. V, VI.  At odds with that system is the Sentencing Reform Act of 1984, which sets up a system that appears to allow a district court to sentence or punish a defendant based upon conduct that is not admitted or proved beyond a reasonable doubt. (Title II of The Comprehensive Crime Control Act of 1984); U.S.S.G. Chapter 1, Part A, intro., comment (3).

In addition to a base sentencing range established by reference to the jury verdict alone, the guidelines prescribe enhanced sentencing ranges based on sentencing factors that are determined by a judge after trial, by a preponderance of the evidence. U.S.S.G. Chapter 1, Part A, introduction, comment (2) and (4)(a). In his dissent in <u>Harris v. United States</u>, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), Justice Thomas reminded us that due process requires that every fact necessary to constitute a crime must be found beyond a reasonable doubt by a jury if that right is not waived.  <u>Id</u>. at 2424 (Thomas, J., dissenting), citing <u>In re Winship</u>, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970).  Society has long recognized a necessary link between punishment and crime.  <u>Harris</u>, 122 S.Ct. at 2424 (Thomas, J., dissenting), citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 478, 120 S.Ct. 2348 (2000) ("The defendant's ability to predict with certainty the judgment from the face of the felony indictment flowed from the invariable linkage

2

of punishment with crime"). "Why, after all, would anyone care if they were convicted of murder, as opposed to manslaughter, but for the increased penalties for the former offense, which in turn reflect the greater moral opprobrium society attaches to the act?" Harris, 122 S.Ct. at 2424 (Thomas, J., dissenting).

If a statute annexes a higher degree of punishment based on certain circumstances, exposing a defendant to that higher degree of punishment requires that those circumstances be charged in the indictment and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 480, (quoting J. Archbold, Pleading and Evidence in Criminal Cases 51 (15th ed. 1862)).

For example, U.S.S.G. § 1B1.3, gives an expansive interpretation of "Relevant Conduct." Under it, ordinary *crimes* such as perjury, subornation of perjury, escape, and obstruction of justice arguably become "relevant conduct" or "sentencing factors." According to Guidelines theorists, these semantics are enough to exempt such criminal conduct from the provisions of the 5th and 6th Amendments to the U.S. Constitution even though persons can be sent to prison for months and even years by proving with "reliable information" (not trial quality evidence) to a judge (not a jury) that it is more probably true than not true (not "beyond a reasonable doubt") that the defendant committed such "relevant conduct" (not crime).

But the sentencing guidelines cannot supersede the U.S. Constitution. The guidelines should not be used to accomplish an "end-run" around the fundamental right to trial by a jury and to usurp the role of the jury. If the jury finds a defendant guilty of a range of drug amount that could be as low as five kilograms, the district court should not be permitted to use the sentencing guidelines to ignore that verdict, take the jury's role, find responsibility for a higher drug amount, and punish based upon that extra-jury determination at a standard lower than proof beyond a

3

reasonable doubt. See <u>Anderson v. Fuller</u>, 455 U.S. 1028, 1032, 102 S.Ct. 1734 (1982) (Burger, C. J., dissenting) (nothing that federal courts should not usurp the function of a jury in finding facts).

Recently, the Supreme Court has begun to realize the fundamental defects in way our justice system determines sentences for criminal defendants in a series of decisions. In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The <u>Ring</u> holding is straightforward and clear-cut: The <u>Apprendi</u> rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. <u>Id.</u> As recently observed by the United States District Court for the district of Massachusetts regarding the Sentencing Guidelines, "the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way. <u>United States v. Green</u>, 2004 U.S.Dist. LEXIS 11292, *13 (D.Mass. 2004).

After <u>Apprendi</u>, the various courts throughout the country assumed the term "statutory maximum" referred to in <u>Apprendi</u> and <u>Ring</u>, was the maximum sentence set forth under the statute listed in the indictment. The courts have assumed that the term "statutory maximum" does not apply to the various sentencing thresholds established under the federal sentencing guidelines. The Supreme Court's decision in <u>Blakely v. Washington</u>, 124 S. Ct. 2531, 159 L. Ed.

4

2d 403 (2004) changes that and indicates that the courts have been wrong, holding that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose **solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. * * *** When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment." <u>Blakely</u>, 124 S.Ct. at 2537(emphasis in original)

The <u>Blakely</u> decision not only clarifies what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in federal court.   The Court noted that the rule announced in <u>Apprendi</u> reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [jury verdict], and that an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law and it is no accusation in reason." <u>Id</u>. at 2536.  The Court then noted the principle in American jurisprudence that "'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury." <u>Id.</u>

The Petitioner submits that compliance with the Sixth Amendment requires "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" to be proved beyond a reasonable doubt. <u>Apprendi</u>, 530 U.S. at 490. The prescribed "'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Blakely</u>, 124 S. Ct. at 2536.  The jury verdict alone – or the defendant's admission alone – "must authorize the sentence." <u>Id.</u> Therefore, the upper bound of the appropriate guideline range, based on facts proven to a jury

5

beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for <u>Apprendi</u> purposes. Under the federal Sentencing Guidelines, drug amounts, enhancements based on a specific offense characteristic, and upward departures all have the same effect – namely, they all *increase* the maximum permissible sentence under the guidelines. A judge's reliance on such factors at sentencing is therefore unconstitutional.

For example, if a defendant is convicted of an offense under 21 U.S.C. § 841 involving 500 grams or more of cocaine, the "jury verdict alone" establishes a base offense level of 26 and a sentencing range of 63 to 150 months imprisonment, depending on the severity of the defendant's prior criminal record. See; U.S.S.G. § 2D1.1(c)(7) (establishing base offense level of 26 based on "at least 500 grams of cocaine.") It is true that a defendant's sentence cannot exceed a second cap of 40 years imprisonment found in § 841(b)(1)(B). However, the critical point here is that the top of the statutory range of imprisonment under the Guidelines is the maximum sentence authorized based solely on the guilty verdict. According to <u>Blakely</u>, a sentencing court has no discretion to exceed that limit.

In the days following <u>Blakely</u>, the Seventh and Eighth Circuit and many district courts have held the Federal Sentencing Guidelines to be unconstitutional as applied. See <u>United States v. Booker</u>, 375 F.3d 508 (7th Cir. 2004)(vacating defendant's sentence after <u>Blakely</u> because sentencing enhancements violated the defendant's Sixth Amendment); <u>United States v. Mooney</u>, 2004 WL 1636960 (8th Cir. 2004); <u>United States v. King</u>, 328 F.Supp.2d 1276 (Middle Dist. Fla. 2004); <u>United States v. Landgarten</u>, 2004 WL 1576516 (E.D.N.Y. 2004); <u>United States v. Croxford</u>, 2004 WL 1521560 (D.Utah 2004) ("<u>Croxford I</u>"); <u>United States v. Lamoreaux</u>, 2004 WL 1557283 (D. Mo. 2004); <u>United States v. Medas</u>, 2004 WL 1498183 (E.D.N.Y. 2004);

6

<u>United States v. Shamblin</u>, 2004 WL 1468561 (S.D.W.Va. 2004); <u>United States v. Green</u>, 2004 U.S. Dist. LEXIS 11292 (D.Mass. 2004).

 The decision issued in <u>Booker</u> followed that issued in <u>Blakely</u>. In <u>Booker</u>, the court was quite clear that no sentencing enhancement, other than a fact of prior conviction, may be issued without submission to a jury if the said enhancement increases the penalty for a crime beyond the statutory maximum. <u>Booker</u>, 375 F.3d at 510. The statutory maximum was stated to be the maximum sentence a judge may imposes "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Id.</u> The defendant in <u>Booker</u> was convicted of possession with intent to distribute at least 50 grams of cocaine base, leading the court to state that the greatest base offense level he could then receive was 32, based upon the same 50 grams of cocaine base. <u>Id.</u> In <u>United States v. Leach</u>, 1003 U.S.Dist. LEXIS 13291 (E.D.Pa. 2004), the court went so far as to state that criminal history points added for committing the instant offense while on probation could not be supported under <u>Blakely</u>, as no evidence was presented to the jury that the defendant committed the instant crime while on probation.

 Contrary to the decision of the aforementioned courts, the Petitioner acknowledges that this circuit has found that the decision in <u>Blakely</u> neither applies to nor invalidates the federal Sentencing Guidelines. <u>United States v. Hammoud</u>, 378 F.3d 426 (4th Cir. 2004). The Petitioner submits, however, that this case was improperly decided, in that the decision in <u>Blakely</u> does apply to the federal Sentencing Guidelines.

 While the holding in <u>Blakely</u> may not apply directly to the federal Sentencing Guidelines, the mere fact that the invalidated state guidelines in <u>Blakely</u> are nearly identical to the federal Guidelines mandates that the holding be applied logically to the federal Guidelines. The

7

Petitioner submits that the reasoning from <u>Blakely</u> is easily transferrable to the federal Guidelines. That reasoning is that any fact that increases an offender's sentence beyond the statutory maximum must be submitted to and proved to a jury beyond a reasonable doubt. The ruling in <u>Blakely</u>, when combined with the fact that the Sentencing Guidelines admittedly "fetter the discretion of sentencing judges", dictate that <u>Blakely</u> must be applied to the federal Sentencing Guidelines. See <u>Mistretta v. United States</u>, 488 U.S. 361, 396 (1989).

The mere fact that Congress has delegated sentencing authority to the courts does not mean that the courts can unilaterally disobey the Constitution of the United States. In delegating this authority, Congress has still established a sentencing structure akin to the sentencing system utilized by Washington and at issue in <u>Blakely</u>. Like Washington's sentencing structure, an offense in the federal criminal system is classified based upon the seriousness of the crime committed, with sentencing departures allowable based upon aggravating factors. For example, violations of 21 U.S.C. § 841 are classified depending upon the amount of drugs involved in the crime, with potential statutory maximums increasing as drug amounts increase. Once the crime has been classified, a judge can depart form the statutory range based upon aggravating factors as contained in the Sentencing Guidelines found by the judge. Therefore, although sentencing discretion has been nominally given to the judiciary, after the Court's decision in <u>Blakely</u>, this discretion is clearly limited to those facts submitted to and proved to a jury beyond a reasonable doubt.

In <u>United States v. Pineiro</u>, 377 F.3d 464 (5th Cir. 2004), the Fifth Circuit admitted that Justice Scalia's disclaimer that the Court in <u>Blakely</u> was not ruling on the federal Guidelines "does not by itself mean that <u>Blakely</u> carries no import for the federal Guidelines, for the binding

force of a Supreme Court decision is ordinarily not limited to the particular set of facts that produces it." Id. at 469. The court went on to say that "Undeniably, Blakely strikes hard at the prevailing understanding of the Guidelines." Id. at 470.

Clearly, this court must look beyond the factual facade that the ruling in Blakely does not apply to the federal Sentencing Guidelines. According to the logic of this circuit, a ruling that segregated restaurants are unconstitutional would not carry over into any other public area, such as hotels, unless specifically dictated by the Supreme Court. Such logic can not stand. The decision in Blakely must be deemed to apply to the federal Sentencing Guidelines.

The Petitioner recognizes that not only must his successive petition pursuant to 28 U.S.C. § 2255 be supported by a new rule of constitutional law, but that this new rule of law must have been made expressly retroactively applicable to cases on review. Tyler v. Cain, 533 U.S. 656, 121 S.Ct. 2478 (2001). The Petitioner recognizes that the Supreme Court has yet to expressly rule on the retroactivity of the rule of law announced in Blakely. However, the Petitioner submits that applying existing case law, the Blakely decision clearly applies retroactively. Furthermore, the Petitioner notes that the instant argument is being made, without an express ruling on retroactivity, so as to preserve the instant issue in anticipation of an impending decision by the Supreme Court on the issue of retroactivity, as well as to insure that the instant petition is filed within the one year filing deadline as dictated by

9

28 U.S.C. § 2244(b)(3)(C).

The Petitioner submits that the instant right conferred by the Court in <u>Blakely</u> is one that has been made retroactively applicable to cases on review. Although the <u>Blakely</u> decision did not expressly announce its retroactivity, the significance of the holding combined with the Court's decision in <u>Teague v. Lane</u>, 489 U.S. 288, 103 L.Ed.2d 344, 109 S.Ct. 1060 (1989), show that the <u>Blakely</u>, ruling must be retroactive to cases on review. In her dissent in <u>Blakely</u>, Justice O'Connor noted that "all criminal sentences imposed under the federal and state guidelines since <u>Apprendi</u> was decision in 2000 arguably remain open to coloateral attack" because of the Court's decision in <u>Teague</u>. In <u>Teague</u>, the Court noted that new rules of constitutional procedure would apply if the new rule involes "those procedures that are implicit in the concept of ordered liberty." <u>Teague</u>, 489 U.S. at 311. Such rules vindicate two discreet concerns: the fundamental fairness of the underlying procedure; and the accuracy of that underlying proceeding. <u>Saffle v. Parks</u>, 494 U.S. 484, 495 (1990).

Unfortunately, a five justice majority has recently stated that the decision in <u>Ring v. Arizona</u>, 536 U.S. 610 (2002) applying <u>Apprendi</u> to Arizona's capital sentencing scheme does not apply retroactively under <u>Teague</u>. <u>Schriro v. Summerlin</u>, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). The Court noted that while the rule at issue was fundamental, it was not one "without which the likelihood of an accurate conviction is seriously diminished." <u>Id</u>. at 2521(quoting <u>Teague</u>, 489 U.S. at 313).

10

Fortunately, in <u>Schriro</u>, the majority's analysis was limited to the <u>Ring</u> rule, as "Arizona law already required aggravating factors to be proved beyond a reasonable doubt." <u>Schriro</u>, 124 S. Ct. at 2521, n.1(citing <u>State v. Jordan</u>, 126 Ariz. 283, 286, 614 P.2d 825, 9292 (1980). Therefore, the majority's opinion that "judicial factfinding so 'seriously diminishes accuracy' is simply too equivocal" to meet the second prong of <u>Teague's</u> exception to the rule against retroactivity does not apply to the instant rule under analysis. <u>Schriro</u>, 124 S.Ct. at 2522. The rule at issue in the instant matter deals with judicial factfinding under the diluted preponderance of the evidence standard.

The shift from the preponderance of the evidence standard to a standard beyond a reasonable doubt is of critical importance in the American justice system. In <u>Cage v. Louisiana</u>, the Court emphasized the vital role of the reasonable doubt standard in avoiding convictions based upon factual error:

> [T]he Due Process Clause of the Fourteenth
> Amendment "protects the accused against
> conviction except upon proof beyond a
> reasonable doubt of every fact necessary to
> constitute the crime with which he is charged."
> <u>In re Winship</u>, 397 U.S. 358, 364 (1970)...
> This reasonable doubt standard "plays a vital
> role in the American scheme of criminal
> procedure, <u>Id</u>. at 363. Among other things, it
> is a prime instrument for reducing the risk of
> convictions resting on factual error.

498 U.S. 39, 39-40 (1990). <u>Winship</u> itself makes clear that the requirement of proof beyond a reasonable doubt is grounded upon

11

accuracy concerns:

> The requirement of proof beyond a reasonable
> doubt has this vital role in our criminal
> procedure for cogent reasons. The accused
> during a criminal prosecution has at stake
> intrest of immense importance, both because
> of the certainty that he would be stigmatized
> by the conviction. Accordingly, a society that
> values the good name and freedom of every
> individual should not condemn a man for
> commision of a crime when there is reasonable
> doubt about his guilt.

397 U.S. at 364. The Court in <u>Winship</u> specifically rejected the
margin of error permitted by a preponderance standard:

> There is always in litigation a margin of
> error, representing error in factfindings,
> shich both parties must take into account.
> Where one party has at stake an interest of
> transcending value - as a criminal defendant
> his liberty - this margin of error is reduced
> as to him by the process of placing on the
> other party the burden of...persuading the
> factfinder at the conclusion of the trial of
> his guilt beyond a reasonable doubt. Due
> process commands that no man shall lose his
> liberty unless the Government has borne the
> burden of...convincing the factfinder of his
> guilt. To this end, the reasonable doubt
> standard is indispensable, for it impresses
> on the trier of fact the necessity of reaching
> a subjective state of certitude of the facts
> in issue.

12

397 U.S. at 364. Importantly, the Supreme Court used its decision
in <u>Ivan V. v. City of New York</u>, 407 U.S. 203, 205 (1972) to give
<u>Winship</u> retroactive effect, as "the major purpose of the
constitutional standard of proof beyond a reasonable doubt
announced in <u>Winship</u> was to overcome an aspect of a criminal trial
that substantially impairs the truth-finding function."

While it seems clear that the rules announced in <u>Apprendi</u>
and most recently in <u>Blakely</u> must be applied retroactively, the
Ninth Circuit disagreed. In <u>United States v. Sanchez-Cervantes</u>,
282 F.3d 664 (2002), the Ninth Circuit concluded that the <u>Apprendi</u>
rule should not be applied retroactively. However, in <u>Sanchez-</u>
<u>Cervantes</u>, the court's decision focused upon whether the <u>Apprendi</u>
rule was to be considered a fundamental right. <u>Id.</u> at 670. The
court determined that the <u>Apprendi</u> rule was not fundamental
within the bounds of <u>Teague</u>, meaning that the court did not
properly evaluate the rule's effect on the accuracy of the
proceedings. <u>Id.</u> at 669-671. Futhermore, in its brief analysis
on the issue of accuracy, the court in <u>Sanchez-Cervantes</u> dealt
with the accuracy of convictions and not the accuracy of sentences.
<u>Id.</u> at 669. As noted, however, the Supreme Court held that the
<u>Apprendi</u> rule was one involving the fundamental fairness of a
proceeding. <u>Shriro</u>, 124 S.Ct. at 2521. Therefore, the decision in
<u>Sanchez-Cervantes</u> clearly was in error in reviewing the
retroactivity of <u>Apprendi</u> rule, and can not be considered good law.

In this case, the result of the new rule of <u>Blakely</u>-that
punishments not based upon jury verdicts or admissions will be

13

vacated-was not dictated by precedent that existed at the time
the Petitioner's conviction became final. As a result, in light
of the new Blakely rule, the Court's holding of Teague, and the
timing of the Petitioner's case, the rule of Blakely must be
applied retroactively to the Petitioner's sentencing.

Furthermore, a failure to apply the Blakely decision
retroactively would create a rift in federal sentencing in
violation of the Eighth Amendment to the United States
Constitution. The Eighth Amendment succinctly prohibits "exessive"
sanctions. Atkins v. Virginia, 122 S.Ct. 2242,2246 (2002). It
provides that "Excessive bail shall not be required, nor excessive
fines imposed, nor cruel and unusual punishments inflicted." In
Weems v. United States, 217 U.S. 349 (1910), the U.S. Supreme
Sourt held that a punishment of 12 years jailed in irons at hard
and painful labor for the crime of falsifying records was
excessive. The Court explained "that it is a precept of justice
that punishment for crime should be graduated and proportioned to
the offense." Id. at 367.

The High Court has repeatedly applied the proportionality
precept in later cases interpreting the Eighth Amendment. See
Harmelin v. Michigan, 501 U.S. 957, 997-998 (1991). Thus, even
though "imprisonment for ninety days is not, in the abstract, a
punishment which is either cruel or unusual," it may not be
imposed as a penalty for "the 'status' of narcotic addiction."
Robinson v. California, 370 U.S. 660, 666 (1962), because such a
sanction would be excessive. as Justice Stewart explained in

14

Robinson, "Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." Id. at 667.

In judging the propriety of sintences, the Supreme Court has traditionally looked to three criteria in evaluating the proportionality of the sentences issued: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdictions. Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001; 77 L.Ed. 2d 637 (1983). Importantly, the proportionality test does not require strict proportionality, but only forbids cases of 'gross' disproportionality. Harmelin, 501 U.S. at 1001.

One can hardly imagine a more disproportionate sentencing scheme than  allowing the Petitioner to serve a term of incarceration of 87 months while an individual who committed the exact same crime but did so with the benefit of the decision in Blakely could receive as little as a 17 month term of incarceration. Clearly, such disproportionality is the exact reason why the Sentencing Guidelines were enacted. Therefore, it is obvious that Blakely must be applied retroactively to the instant case.

Accordingly, as Mr. Wilson sentence has been imposed in violation of his constitutional rights to a jury trial and due process of law, the Petitioner's sentence must be vacated and this matter remanded for re-sentencing consistent with the findings of this court and the constitutional principles embodied in the Fifth and Sixth Amendments.

15

## CONCLUSION

The petitioner is asking for a fair and just conclusion to this case. The petitioner plead guilty to count I, of the indictment and that punishment is what he should have received, not an enhancement of a large amount of marijiwana.

The petitioner prays that this Honorable Court will grant him this Motion, and give him the proper Sentence.

Respectfull,

_____

Aldin Wilson
Reg # 55421·004
F.C.I. Ft. Dix,
P.O. Box 7000
Fort Dix, N.J. 08640

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **00 - 6230** CR - DIMITROULEAS

21 U.S.C. § 841(a)(1)  MAGISTRATE JUDGE
21 U.S.C. § 846        SNOW
21 U.S.C. § 952(a)
21 U.S.C. § 963
18 U.S.C. § 2



UNITED STATES OF AMERICA,

v.

ALDIN WILSON,
ESROM WILLIAMS,
DAVID NESBETH,
THADDEUS WARREN,
CLIFFORD GRANSTON,
and
MARC ANTHONY JOHNSON,

       Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

### COUNT I

From on or about May 31, 2000, through on or about August 6, 2000, at Broward County,

in the Southern District of Florida, and elsewhere, the defendants,

**ALDIN WILSON,**
**ESROM WILLIAMS,**
**DAVID NESBETH,**
**THADDEUS WARREN,**
**and**
**MARC ANTHONY JOHNSON,**

did knowingly and intentionally combine, conspire, confederate and agree with each other and with

other persons known and unknown to the Grand Jury to import into the United States, from a place

outside thereof, in excess of one hundred (100) kilograms of a Schedule I controlled substance, that

is, a mixture and substance containing a detectable amount of marijuana, in violation of Title 21,

United States Code, Section 952(a); all in violation of Title 21, United States Code, Section 963.

### COUNT II

On or about August 6, 2000, at Broward County, in the Southern District of Florida, and

elsewhere, the defendants,

**ALDIN WILSON,
ESROM WILLIAMS,
DAVID NESBETH,
THADDEUS WARREN,
and
MARC ANTHONY JOHNSON,**

did knowingly and intentionally import into the United States, from a place outside thereof, in excess

of one hundred (100) kilograms of a Schedule I controlled substance, that is, a mixture and substance

containing a detectable amount of marijuana; in violation of Title 21, United States Code, Section

952(a), and Title 18, United States Code, Section 2.

### COUNT III

From on or about May 31, 2000, through on or about August 9, 2000, at Broward County,

in the Southern District of Florida, and elsewhere, the defendants,

**ALDIN WILSON,
ESROM WILLIAMS,
DAVID NESBETH,
THADDEUS WARREN,
CLIFFORD GRANSTON,
and
MARC ANTHONY JOHNSON,**

did knowingly and intentionally combine, conspire, confederate and agree with each other and with

2

other persons known and unknown to the Grand Jury to possess with the intent to distribute in excess

of one hundred (100) kilograms of a Schedule I controlled substance, that is, a mixture and substance

containing a detectable amount of marijuana, in violation of Title 21, United States Code, Section

841(a)(1); all in violation of Title 21, United States Code, Section 846.

### COUNT IV

On or about August 9, 2000, at Broward County, in the Southern District of Florida, the

defendants,

**ALDIN WILSON,**
**ESROM WILLIAMS,**
**DAVID NESBETH,**
**THADDEUS WARREN,**
**CLIFFORD GRANSTON,**
**and**
**MARC ANTHONY JOHNSON,**

did knowingly and intentionally possess with the intent to distribute in excess of one hundred (100)

kilograms of a Schedule I controlled substance, that is, a mixture and substance containing a

detectable amount of marijuana; in violation of Title 21, United States Code, Section 841(a)(1), and

Title 18, United States Code, Section 2.

A TRUE BILL

_____
FOREPERSON

_____
GUY A. LEWIS
UNITED STATES ATTORNEY

_____
BERTHA R. MITRANI
ASSISTANT UNITED STATES ATTORNEY

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this foregoing instrument has been mailed postage prepaid on this _28th_ day of _Feb_ 2005, to the _AUSA Bertha Mitrani_ At _500 East Broward Blud. 7th Fl. Ft Lauderdale, Fl. 33394_ by depositing same in the legal mail box at _FCI Ft. Dix_ _New Jersey_ institution.

Aldin Wilson
Reg # 55421·004
P.O. Box 7000
Fort Dix, N.J. 08640